IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Ms. LaToya Reed,<br><br>    Plaintiff,<br><br>  v.<br>South Carolina Adjutant General's Office,<br>The South Carolina Military Department, Roy Van McCarty, in his individual and official capacity, Jeffrey Jones, in his individual and official capacity, and Ken Braddock, in his individual and official capacity,<br>    Defendants. | C/A No.: 3:25-cv-12903-JDA-SVH<br><br><br>COMPLAINT<br>**Jury Trial Requested** |

Plaintiff Latoya Reed, by and through her undersigned counsel, asserts the following Causes of Action: Race Discrimination , Gender Discrimination, Title VII Racially Hostile Work Environment, and Retaliation, against Defendant South Carolina Adjutant General's Office, the South Carolina Military Department, Roy Van McCarty, in his individual and official capacity, Jeffrey Jones, in his individual and official capacity, and Ken Braddock, in his individual and official capacity, based on the following assertions.

## ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

a.  Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC") on October 22, 2024.

b.  Plaintiff <u>received</u> a Notice of Right to Sue from the EEOC on July 16, 2025.

1

Plaintiff has timely filed this action within (90) days from the date on which she received her Notice of Right to Sue.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's federal claims 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 2000(e) et. seq. (Title VII of the Civil Rights Act of 1964 ("Title VII")) and other Federal statutes., as this action arises under the laws of the United States, spec, which prohibits race discrimination and retaliation in the making and enforcement of contracts.

2. Venue is proper in the Columbia Division, because the Causes of Action arose therein, the acts and practices complained of occurred there, and it is where Defendants do business and may be found.

## PARTIES

3. Plaintiff is an African American female and a citizen of the United States. The Plaintiff resides in Lexington County, South Carolina, within this Judicial District.

4. Defendant South Carolina Adjutant General's Office is an agency of the State of South Carolina

5. Defendant South Carolina Military Department is a governmental department of the State of South Carolina.

6. Defendant Roy Van McCarty ("McCarty") is the former Adjutant General of South Carolina.

7. Defendant Jeffrey Jones ("Jones") is the Deputy Adjutant General of South Carolina

8. Defendant Ken Braddock ("Braddock") is the Chief of Staff for the South Carolina Military Department

## FACTS

1. The Plaintiff is a 47-year-old, African American woman.

2. The Plaintiff commenced employment with the South Carolina Adjutant General Agency, an arm of the State of South Carolina Military Department. She was named Director of the South Carolina Youth Challenge Academy on February 2, 2018 and held the position until her unlawful termination on October 16, 2024

3. The Plaintiff upon being installed as the Director/CEO became the first African American and the first Female of the Youth Challenge Academy. In addition, the position which traditionally was occupied by Caucasian military-oriented male Directors on February of 2018 was now administered by a non-military Female.

4. From beginning the position, the Plaintiff realized her greatest challenge was the Male acceptance of a non-military Female.

5. Between February of 2018 until her unlawful termination on October 16, 2024, the Plaintiff was beset with a Caucasian-male dominated atmosphere that undermined her leadership authority as Director and challenged her administrative ideas and recommendations for improving the academic structure of the Academy as well as the physical facilities where students were housed in their quest to get an education.

6. Plaintiff as early as March of 2018 realized that the day-to-day operations of management would have to be with support of the Caucasian Male management team supervising her

job. It became quite apparent that the support would not be forth coming then and the lack of support until her termination.

7. In January of 2024, the Plaintiff was informed that multiple allegations regarding the management of the Academy had been lodged both internally and externally regarding the leadership and housing concerns which the anonymous allegations focused directly upon the management team of the Plaintiff.

8. Subsequently, a news article was released which directly named the persons making the allegations of abuse, neglect, and housing issues involving mold infestation in the dormitories. The Plaintiff realized that the accusers making these allegations were disgruntled former employees who committed disciplinary violations while in the employment of the Agency.

9. The Plaintiff was informed by her managers and the News Article that she was the subject of an investigation by the South Carolina Department of Social Services and the Military Criminal Investigation Division.

10. The Plaintiff believing that her Caucasian managers to include the former Adjutant General Roy Van McCarty (WM), Jeffrey Jones Deputy Adjutant General (WM), and Chief of Staff Ken Braddock (WM) would support her administration regarding the allegations, was shocked and dismayed that the above-named Defendants did not support her management.

11. In fact, as previously stated above her primary antagonist from the day she assumed office was Chief of Staff Ken Braddock (WM) who made a point of questioning the Plaintiff's right to be there and her management of the Youth Challenge Academy. The Plaintiff availed herself of internal channels to contest the allegations seeking support

from the Executive Staff was met with indifference and non-action regarding the dilapidation of the facility's management and physical rehabilitation of the facilities was not a part of her job duties. The Plaintiff told the Executive team that this was an Agency budget matter beyond her control.

12. On March 18, 2024 the Plaintiff was reassigned as CEO and placed under the direct supervision of Chief of Staff Ken Braddock (WM) in retaliation for her calling out the Executive team for their efforts to make her the Agency Scapegoat.

13. While the Plaintiff was under Braddock's supervision, he immediately undertook a pattern and practice of ignoring her, engaging in daily harassment and intimidation, and working to create stress, anxiety, and pressure, despite the fact that the Plaintiff had never received any documented warning notices or disciplinary violations.

14. In an effort to further prove her management confidence, Plaintiff when told that several agencies were investigating the allegations made in January of 2024 fully cooperated with the South Carolina Department of Social Services and that agency's investigation and determination cleared Plaintiff and the Academy of the allegations and ruled the allegations were unfounded.

15. Plaintiff, hoping that she would be returned to her position after the DSS investigation, was informed by DSS that she could not return to her station until the Criminal Investigation Division (CID) of Fort Jackson completed its investigation an investigation that, in fact, never occurred. Although DSS had already determined as early as March/April 2024 that the allegations were unfounded no one in management ever informed her, Plaintiff did not find out until May 2024, and only after she personally contacted DSS to obtain this information. Despite being cleared, Plaintiff was told by the

Caucasian male management team that she would remain under the supervision of Braddock and would not be reinstated to her CEO position. When Plaintiff questioned her supervisors named above as to why she had not been informed that she was cleared, she received no explanation. Plaintiff immediately believed that the Defendant's failure to inform her of her clearance was intentional, and that the true purpose was to pretextually continue the process of forcing her out of her position.

16. Prematurely following the DSS determination and without any resolution or decision made by The Criminal investigation Division take our Charging Party secured legal counsel and began to challenge the motives to remove her from her position was retaliated against on October 10, 2024 stating that she was terminated without any valid evidence that she had violated Agency Policy. Plaintiff received her termination on October 16, 2024 without any definitive justification of her termination.

17. Therefore, Plaintiff believes that she has been a victim of discrimination under Title VII of the Civil Rights Act of 1964 as amended on the basis of her Race (AA), her Gender (Female), Retaliated against for seeking redress both through internal Agency management and externally through the hiring of Legal Counsel.

18. In addition, Plaintiff asserts that her rights under State and Federal law on other causes of action are supplemental to the Charge herein.

## FIRST CAUSE OF ACTION
Title VII of Civil Rights Act of 1964 *Race Discrimination*

19. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

20. Plaintiff is an African American woman and, at all relevant times, was qualified for

6

her position as Director of the South Carolina Youth Challenge Academy.

21. From the start of her tenure, Plaintiff was treated differently from her Caucasian male predecessors, whose authority and leadership were respected and supported by Defendants.

22. Unlike her white predecessors, Plaintiff's decisions, management style, and administrative initiatives were consistently questioned, challenged, or disregarded by Defendants and other Caucasian male members of leadership.

23. Plaintiff was denied the institutional support, resources, and deference historically provided to Caucasian male Directors, creating an atmosphere where her authority was systematically undermined.

24. Defendant Braddock, a Caucasian male, repeatedly questioned Plaintiff's qualifications and her right to hold the position, despite Plaintiff's successful performance and the absence of any disciplinary issues.

25. Defendants created and tolerated a racially hostile work environment, wherein Plaintiff's leadership was disregarded, her recommendations ignored, and her presence as the first African American Director was met with resistance and animosity.

26. When anonymous allegations were raised in January 2024, Plaintiff was singled out as the focus of investigations, even though the issues involved broader agency operations and facility conditions that were outside her control.

27. Defendants failed to inform Plaintiff that she had been cleared by the South Carolina Department of Social Services of all allegations in March/April 2024, a deliberate act intended to damage her credibility and professional standing. By contrast, Caucasian employees were not subjected to the same concealment or targeted blame-shifting.

28. Plaintiff's reassignment under the direct supervision of Defendant Braddock was not only retaliatory but also racially discriminatory, as it stripped her of authority while allowing Caucasian employees with less responsibility to maintain their independence.

29. Ultimately, Plaintiff was terminated without cause on October 16, 2024. Her termination was inconsistent with the treatment of Caucasian male leaders, who were historically afforded institutional protection and not terminated based on unsubstantiated or unfounded allegations.

30. Defendants' actions constitute unlawful race discrimination in violation of Title VII, as Plaintiff was treated less favorably than similarly situated Caucasian male employees and was subjected to a hostile environment and termination because of her race.

SECOND CAUSE OF ACTION:

Title VII of Civil Rights Act of 1964 *Sex Discrimination*

31. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

32. Plaintiff made history as the first female Director of the Youth Challenge Academy. Prior to her appointment, the position had been held exclusively by male, military-affiliated Directors who were supported and accepted by the Agency's leadership.

33. From the outset, Plaintiff's authority was diminished and questioned not because of her performance but because of her gender and non-military background.

34. Defendants, particularly Defendant Braddock, openly challenged Plaintiff's right to lead the Academy, sending a clear message that as a female leader she was unwelcome and unqualified in their eyes.

35. Plaintiff was subjected to constant second-guessing of her leadership decisions, micromanagement, and disregard of her recommendations — treatment that was not imposed upon her male predecessors or male peers.

36. Unlike her male counterparts, Plaintiff was denied full administrative support, and her efforts to address systemic problems at the Academy (including budgetary and facility issues outside her control) were met with indifference or outright hostility.

37. Plaintiff was reassigned on March 18, 2024, and placed under the direct supervision of Defendant Braddock, who had been her most vocal antagonist. This action was gender-based as well as retaliatory, as no male Director had ever been demoted or stripped of authority in this manner.

38. Male employees and leaders were given greater latitude to manage operations without interference, whereas Plaintiff was forced to defend her authority daily and subjected to a hostile work environment designed to undermine her confidence and

position.

39. Despite Plaintiff's successful cooperation with the South Carolina Department of Social Services investigation, which cleared her of all allegations, Defendants refused to restore her to her CEO role, leaving her subordinate to Braddock. Male leaders, by contrast, were shielded and reinstated following any internal issues.

40. Plaintiff was ultimately terminated on October 16, 2024, without any legitimate justification. Defendants' decision was based, in substantial part, on gender bias and the stereotype that a woman, particularly a non-military woman, was incapable of leading a male-dominated, quasi-military institution.

41. Defendants' conduct constitutes gender discrimination in violation of Title VII, as Plaintiff was treated less favorably than her male counterparts, denied equal terms and conditions of employment, subjected to a hostile work environment, and ultimately terminated because of her gender.

THIRD CAUSE OF ACTION:

Title VII of Civil Rights Act of 1964 *Retaliation*

42. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

43. Plaintiff's protected activity was met with immediate adverse actions, including her reassignment on March 18, 2024, from her CEO role to serve directly under Defendant Braddock, her most vocal critic and antagonist.

44. The reassignment materially changed the terms and conditions of her employment by

stripping Plaintiff of authority, diminishing her professional standing, and forcing her to work under hostile supervision.

45. Following her reassignment to the main office under the supervision of Ken Braddock, Plaintiff was subjected to retaliatory treatment. Unlike her prior role, she was excluded from all meaningful work assignments, deliberately ignored by management and staff, and left to sit idly in a cubicle each day without duties or responsibilities. This purposeful isolation and exclusion constituted a continuation of the harassment and retaliation, intended to demean Plaintiff, undermine her professional standing, and force her out of her position.

46. Plaintiff was intentionally not informed by Defendants that the South Carolina Department of Social Services had cleared her of all allegations in March/April 2024. The deliberate concealment of this exculpatory information was a retaliatory tactic designed to continue discrediting Plaintiff and to provide pretext for her eventual removal.

47. When Plaintiff confronted her supervisors about why she had not been told that DSS found the allegations "unfounded," Defendants failed to provide an answer, further confirming their retaliatory intent.

48. After Plaintiff retained legal counsel to challenge the discriminatory and retaliatory treatment, Defendants escalated their efforts to remove her from employment.

49. On October 10, 2024, Plaintiff was informed that she would be terminated, and on October 16, 2024, she was officially discharged.

50. Plaintiff's termination occurred within months of her reassignment and shortly after she engaged in protected activity, establishing a clear causal connection between her protected conduct and the adverse employment actions.

51. Defendants' actions were pretextual and motivated not by legitimate business reasons but by an intent to punish Plaintiff for challenging discrimination, reporting misconduct, and securing legal representation.

52. Defendants' retaliatory actions including reassignment, harassment, concealment of favorable findings, and ultimate termination constitute unlawful retaliation in violation of Title VII.

FOURTH CAUSE OF ACTION:

Title VII of Civil Rights Act of 1964 Racially *Hostile Work Environment*

53. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

54. Plaintiff was subjected to a racially hostile work environment from the time she assumed her role as Director of the South Carolina Youth Challenge Academy.

55. Plaintiff was the first African American to hold the Director position, which had historically been reserved for Caucasian male leaders. Her presence as a Black woman in this leadership role was met with daily resistance, daily hostility, and efforts to delegitimize her authority.

56. From the beginning of her tenure, Caucasian male leaders and staff routinely undermined Plaintiff's decisions, questioned her qualifications, and resisted her

directives behavior that was not directed at her Caucasian predecessors.

57. Defendant Braddock, in particular, repeatedly expressed skepticism about Plaintiff's right to serve as Director, challenged her management, and created an environment where her authority was openly disrespected.

58. Plaintiff's recommendations for improving academic programs, housing conditions, and facility management were dismissed or ignored, while similar suggestions made by Caucasian male staff were given weight and consideration.

59. Plaintiff was excluded from support systems and resources afforded to her white predecessors, forcing her to manage the Academy without the institutional backing necessary for success.

60. The work environment became increasingly hostile as Plaintiff was falsely scapegoated for facility issues that were outside her control and historically overlooked when white Directors held the role.

61. The concealment of the Department of Social Services' finding that allegations against Plaintiff were "unfounded" further deepened the racially hostile environment, as it prolonged the stigma and suspicion directed at Plaintiff based on unfounded accusations.

62. Defendants' refusal to acknowledge or correct this hostile treatment, combined with their failure to intervene when Plaintiff reported discriminatory conduct, ratified and encouraged the racially hostile work environment.

63. The hostile work environment was severe continuous pervasive, altering the conditions of Plaintiff's employment, causing humiliation, stress, and emotional distress, and interfering with her ability to perform her job duties.

64. Defendants' conduct constitutes a violation of Title VII's prohibition against a racially hostile work environment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in her favor and against Defendants, and grant the following relief:

A. Declare that Defendants' conduct, as alleged herein, violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, and applicable state and federal laws;

B. Enter judgment that Plaintiff was subjected to unlawful race discrimination, gender discrimination, retaliation, and a racially hostile work environment in violation of Title VII;

Award Plaintiff back pay, front pay, lost benefits, and all other compensation lost as a result of her unlawful termination;

C. Award Plaintiff compensatory damages for emotional distress, humiliation, mental anguish, pain and suffering, and damage to her professional reputation;

D. Award Plaintiff her reasonable attorneys' fees, costs, and expenses incurred in bringing this action pursuant to 42 U.S.C. § 2000e-5(k) and other applicable laws;

D. Award Plaintiff punitive damages against the individual Defendants to deter them and others from engaging in similar unlawful conduct;

F.  Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

                                        Respectfully Submitted,

                                        _____s/Donald Gist_____
                                        Donald Gist (13098)
                                        ***GIST LAW FIRM, P.A.***
                                        4400 North Main Street (29230)
                                        Columbia, South Carolina 29230
                                        Tel. (803) 771-8007
                                        Fax (803) 771-0063
                                        Email: dtommygist@yahoo.com

October 9, 2025